IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD GONZALES,

                Petitioner,

       vs.

GARY SWARTHOUT, Warden, California
State Prison, Solano,

                Respondent.

No. 2:10-cv-00205-JKS

MEMORANDUM DECISION

Richard Gonzales, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Gonzales is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Solano. Respondent has answered, and Gonzales has replied.

## I.  BACKGROUND

In August 1998 Gonzales was convicted in the Orange County Superior Court of Murder in the Second Degree (Cal. Penal Code § 187) and sentenced to an indeterminate prison term of fifteen years to life. Gonzales does not challenge his conviction or sentence in this proceeding.

In February 2009 Gonzales appeared in a parole suitability hearing before the California Board of Parole Hearings ("Board"). The Board, finding that Gonzales continued to pose a continuing risk of danger to society if released from prison, denied parole. The Board, applying Cal. Penal Code § 3041.5, deferred Gonzales's next parole suitability hearing for three years. The Orange County Superior Court denied Gonzales's petition for habeas relief in a reasoned decision. The California Court of Appeal, Fourth Appellate District, summarily denied Gonzales's petition for habeas relief without opinion or citation to authority, and the California

Supreme Court did the same on December 17, 2009.  Gonzales timely filed his Petition in this

Court on January 24, 2010.

## II.  GROUNDS RAISED/DEFENSES

Gonzales raises two grounds for relief:  (1) that the Board's application of the 2008

amendment to California Penal Code § 3041.5 (Marsy's law) to him violates the *Ex Post Facto*

Clause, United States Constitution Article I section 10, and (2) that the decision of the Board

denying parole is not supported by sufficient evidence.  Respondent does not assert any

affirmative defenses.

## III.  PRIOR PROCEEDINGS BEFORE THIS COURT

In February 2011 the Magistrate Judge entered Findings and Recommendations

recommending that Gonzales's Petition be denied.[1]  Gonzales's objection notwithstanding, this

Court adopted the Findings and Recommendations in full,[2] and judgment was entered denying

the Petition and denying a Certificate of Appealability (COA) .[3]  Gonzales timely appealed and

sought a COA from the court of appeals, and on January 24, 2012, a panel of the Court of

Appeals vacated and remanded in an unreported decision:[4]

> We grant the request for a certificate of appealability with respect to the issue
> of whether the district court properly denied appellant's 28 U.S.C. § 2254 petition
> without specifically addressing his ex post facto claim, *see* 28 U.S.C. § 2253(c)(3),

---

[1] Docket No. 18.

[2] Docket No. 20.

[3] Docket No. 21.

[4] The panel concluded that this Court had failed to address the exhausted claim based upon the ex post facto prohibition.  It contacted the state and asked whether it should grant the COA and decide the appeal or remand directing this Court to consider the issue.  Apparently the state preferred the latter approach.

*Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000), and summarily vacate the district court's March 28, 2011, dismissal order and judgment.  This case is remanded to the district court with instructions that the district court review and enter an order and judgment resolving the ex post facto claim raised in appellant's 28 U.S.C. § 2254 petition.[5]

After remand, the assigned Magistrate Judge entered Findings and Recommendations recommending that the Petition be denied.[6]  Gonzales filed objections to those Findings and Recommendations,[7] and they were withdrawn.[8]  Thereafter the reference to the Magistrate Judge was withdrawn and this case was reassigned to this Court.[9]  The Court has reviewed the entire record with particular attention to any documents filed after remand from the Ninth Circuit.  The record is complete and the case is ripe for decision.  In making its decision, this Court has also considered the arguments raised by Gonzales in his objections.

## IV.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[5] Docket No. 27 at 2.

[6] Docket No. 28.

[7] Docket No. 30.

[8] Docket No. 31.

[9] Docket No. 32.

proceeding."[10]  The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

time of the relevant state-court decision."[11]  The holding must also be intended to be binding

upon the states; that is, the decision must be based upon constitutional grounds, not on the

supervisory power of the Supreme Court over federal courts.[12]  Thus, where holdings of the

Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that

the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[13]  When a claim falls

under the "unreasonable application" prong, a state court's application of Supreme Court

precedent must be "objectively unreasonable," not just "incorrect or erroneous."[14]  The Supreme

Court has made clear that the objectively unreasonable standard is "a substantially higher

threshold" than simply believing that the state-court determination was incorrect.[15]  "[A]bsent a

specific constitutional violation, federal habeas corpus review of trial error is limited to whether

the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due

---

[10] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[11] *Williams*, 529 U.S. at 412 (alteration added).

[12] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[13] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[14] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[15] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

process.'"[16]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[17]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[18]

> The Supreme Court recently underscored the magnitude of the deference required:
>
> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[19]

---

[16] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[17] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[18] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[19] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[20]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[21]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[22]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[23]  This is considered as the functional equivalent of the appeal process.[24]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

---

[20] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[21] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[22] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[23] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[24] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

by clear and convincing evidence.[25]  This presumption applies to state-trial courts and appellate courts alike.[26]

## V.  DISCUSSION

The sole issue this Court may consider on remand is Gonzales's first ground,[27] i.e., that application of the 2008 amendment to Penal Code § 3041.5 to Gonzales violated the *Ex Post Facto* Clause.  In denying Gonzales relief, the Orange County Superior Court held:

> [Gonzales] next contends that retroactive application of recently amended Penal Code § 3041.5 to defer his next parole consideration hearing for three years improperly increases his punishment in violation of the terms of his plea agreement as well as the constitutional proscription against ex post facto legislation.
>
> At the time of [Gonzales's] conviction in 1988, the Board of Parole Hearings (formerly the Board of Prison Terms) was required to hold parole consideration hearing for eligible life inmates every one to two years.  (See, Pen. Code, § 3041.5(b)(2) (1988).)  In 1995, § 3041.5 was amended to expand the deferral period up to five years.  (See, Pen. Code,.§ 3041.5(b )(2)(B) (1995).)  Last year, voters passed Proposition 9 that expanded the deferral period up to 15 years. (Pen. Code, § 3041.5(b)(3)(A).)  Pursuant to Penal Code§ 3041.5(b )(3)(c), the Board deferred [Gonzales's] next parole suitability hearing for three years.
>
> The constitutional proscription against ex post facto legislation is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts.   The controlling inquiry in evaluating whether the retroactive

---

[25] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[26] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

[27] *See United States v. Thrasher*, 483 F.3d 977, 981-82 (9th Cir. 2007) (under the rule of mandate, "a district court [can] not revisit its already final determinations unless the mandate allowed it."); *United States v. Pimental*, 34 F.3d 799, 800 (9th Cir. 1994) (the rule of mandate is jurisdictional).  Even in the absence of a restricted mandate Gonzales could not prevail on his second ground.  *See Swarthout v. Cooke*, 131 S.Ct. 859, 861, *reh'g denied*, 131 S.Ct. 1845 (holding that challenges to the California court's handling of "some evidence" findings related solely to questions of state law are beyond the reach of federal habeas corpus); 28 U.S.C. § 2254.

application of a statute permitting the extension of intervals between parole consideration hearings violates the ex post facto clause is whether such application produces a sufficient risk of increasing the measure of punishment attached to covered crimes. (*California Department of Corrections v. Morales* (1995) 514 U.S. 499, 504, 509.) To establish an ex post facto violation, an inmate must demonstrate that the retroactive application of a statute extending the intervals between parole consideration hearings creates a significant risk of increasing his punishment. *(Garner v. Jones* (2000) 529 U.S. 244, 255.)

[Gonzales's] claim is without merit. [Gonzales] did not plead guilty. No violation of a non-existent plea agreement is established. More importantly, Penal Code § 3041.5, as amended and applied to [Gonzales], did not alter the definition of his crime nor increase its punishment. As was the case back in 1988, second degree murder remains punishable by an indeterminate term of 15 years to life in state prison. Retroactive application of the statute also does not impose a significant risk of increasing the measure of punishment. The amendment does not alter the standards for determining parole suitability and setting a release date. Though [Gonzales's] next parole suitability hearing is deferred until 2012, the Board has the statutory authority to advance the date of [Gonzales's] next hearing if there is a change in circumstances or new information surfaces establishing a reasonable likelihood that an extended period of imprisonment is not warranted. (Pen. Code, § 3041.5(b)(4).) [Gonzales] may also request that the Board exercise its discretion to advance a hearing to an earlier date when there is a change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require continued imprisonment. (Pen. Code, § 3041.5(d)(1).) Under these circumstances, [Gonzales] does not establish an ex post facto violation.[28]

Since neither the California Court of Appeal nor the California Supreme Court explained their reasons for denying Gonzales relief, the last reasoned decision in this case is that of the Orange County Superior Court and it must be assumed that the appellate courts agreed with its analysis.[29]

---

[28] Docket No. 16-4 at 9-11.

[29] *Ylst v. Nunnemaker*, 501 U.S. at 804.

The state court addressed the *ex post facto* claim on the merits and cited the controlling decisions of the United States Supreme Court in *Morales*[30] and *Garner*.[31]  As a result, this Court must defer to the California Courts unless convinced that the application of *Garner* and *Morales* is unreasonable.[32]

In *Gilman*,[33] an analogous case, the Ninth Circuit reversed a district court decision granting a class of prisoners similarly situated to Gonzales a preliminary injunction preventing California from applying Penal Code § 3041.5 retroactively to prisoners, who like Gonzales committed their crimes before the initiative amending the section went into effect, on the assumption that to do so violated the ex post facto prohibition in the Federal Constitution.  That is the argument Gonzales makes in this case.  In rejecting the prisoner's arguments the court relied on reasoning substantially similar to the reasoning of the Orange County Superior court in denying Gonzalez's habeas petition.

In reaching its decision in *Gilman*, the Ninth Circuit summarized the changes to the law governing deferral periods.

> The most significant changes are as follows: the minimum deferral period is increased from one year to three years, the maximum deferral period is increased from five years to fifteen years, and the default deferral period is changed from one year to fifteen years.  *See id.*  Further, the burden to impose a deferral period other than the default period increased.  Before Proposition 9 was enacted, the deferral period was one year unless the Board found it was *unreasonable* to expect the prisoner would become suitable for parole within one year.  Cal.Penal Code § 3041.5(b)(2) (2008).  After Proposition 9, the deferral period is fifteen years unless

---

[30] *Cal. Dept. of Corr. v. Morales*, 514 U.S. 499 (1995).

[31] *Garner v. Jones*, 529 U.S. 244 (2000).

[32] *Richter*, 131 S.Ct. at 786-87.

[33] *Gilman v. Schwarzenegger*, 638 F.3d 1101 (9th Cir. 2012).

the Board finds by *clear and convincing* evidence that the prisoner will be suitable for parole in ten years, in which case the deferral period is ten years.  Cal.Penal Code § 3041.5(b)(3)(A)-(B) (2010).  If the Board finds by clear and convincing evidence that the prisoner will be suitable for parole in seven years, the Board has discretion to set a three-, five-, or seven-year deferral period.  *Id.* § 3041.5(b)(3)(B)-(C).

Proposition 9 also amended the law governing parole deferral periods by authorizing the Board to advance a hearing date.  The Board may exercise its discretion to hold an advance hearing *sua sponte* or at the request of a prisoner.  "The board may in its discretion . . . advance a hearing . . . to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner . . . ."  *Id.* § 3041.5(b)(4).  Also, a prisoner may request an advance hearing by submitting a written request that "set[s] forth the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration."  *Id.* § 3041.5(d)(1).  A prisoner is limited to one such request every three years. *Id.* § 3041.5(d)(3).  Although the minimum deferral period is three years, there is *no* minimum period the Board must wait before it holds an advance hearing.  *See id.* § 3041.5(b)(4).[34]

In *Garner*, the Supreme Court made clear that retroactive changes to a state's parole laws may, in some instances, violate the *Ex Post Facto* Clause.[35]  In order to establish an *ex post facto* violation based on a state's retroactive application of a parole statute, a prisoner must demonstrate that the new statute "creates a significant risk of prolonging [the prisoner's] incarceration."[36]  Where, however, a change in the law that does nothing more than alter the method of granting parole under identical substantive standards, the *Ex Post Facto* Clause is not implicated.[37]  Likewise, the Supreme Court has found that there was no *ex post facto* violation where the new law allowed for higher court review of intermediate court decisions, even though

---

[34] *Id.* at 1104-05.

[35] *Garner*, 529 U.S. at 250 (citing *Lynce v. Mathis*, 519 U.S. 433, 445-46 (1997)).

[36] *Id*.

[37] *See Morales*, 514 U.S. at 507-08 (holding that a change to allowing the Board to increase the time between reviews did not violate the *Ex Post Facto* Clause).

the petitioner would have been entitled to a final intermediate court decision at the time he committed his crime.[38]  In *Gilman*, the Ninth Circuit, applying *Garner* and *Morales* in a 42 U.S.C. § 1983 civil rights action, specifically held that the amendment of § 3041.5 by the California Victims' Bill of Rights Act of 2008 ("Marsy's Law") at issue herein did not violate the *Ex Post Facto* Clause on its face.[39]  *Gilman* did, however, leave open the second *ex post facto* test:  Gonzales "can 'demonstrate, by evidence drawn from [Proposition 9's] practical implementation . . . , that its retroactive application will result in a longer period of incarceration than under the [prior law]."[40]

In his Petition, Gonzales argues "the relevant question is whether there is an appreciable risk that [Gonzales] will suffer longer imprisonment as a result of not having a hearing sooner than three years from now."[41]  The Ninth Circuit addressed and rejected that very argument in *Gilman*:

> Even assuming, without deciding, that the statutory changes decreasing the frequency of scheduled hearings would create a risk of prolonged incarceration, the availability of advance hearings is relevant to whether the changes in the frequency of parole hearings create a significant risk that prisoners will receive a greater punishment. *Garner,* 529 U.S. at 256–57, 120 S.Ct. 1362; *Morales,* 514 U.S. at 512, 115 S.Ct. 1597.  In *Morales,* the prisoner contended "there [was] some chance that

---

[38] *Mallett v. North Carolina*, 181 U.S. 589, 595-98 (1901); *see Collins v. Youngblood*, 497 U.S. 37, 45 (1990) (discussing the differences between changes in procedures by which a criminal case is adjudicated, generally not subject to *ex post facto* limitations, and changes in the substantive law of crimes).

[39] *Gilman*, 638 F.3d at 1106-11.

[40] *Id.* at 1106 (quoting *Garner*, 529 U.S. at 255) (alterations in the original).

[41] Docket No. 1 at 23.  This restates verbatim the question raised in Gonzales's State-habeas petitions.  In Petitioner's Objections to the Magistrate Judge's Findings and Recommendations, Gonzales also argued that the increase in the default deferral period and the increased burden of proof to depart from the default period violates the *Ex Post Facto* Clause.  Those provisions were not invoked by the Board in this case and they are not properly before this Court.

the amendment might . . . produce an increased term of confinement for some prisoners who might experience a change of circumstances that could render them suitable for parole during the period between their hearings." 514 U.S. at 512, 115 S.Ct. 1597. The Court rejected this contention and explained that, even if it assumed such a change of circumstances, "there is no reason to conclude that the amendment will have any effect on any prisoner's actual term of confinement, for the current record provides no basis for concluding that a prisoner who experiences a drastic change of circumstances would be precluded from seeking an expedited hearing from the Board." *Id.* Even though such expedited hearings were not provided by statute or regulation, the Court relied on the Board's "practice" of "review[ing] for merit any communication from an inmate asking for an earlier suitability hearing." *Id.* As the Court explained, "[a]n expedited hearing by the Board ... would *remove any possibility of harm*" to prisoners who experienced changes in circumstances between hearings. *Id.* at 513, 115 S.Ct. 1597 (emphasis added).

Here, advance hearings are explicitly made available by statute: "The board may in its discretion . . . advance a hearing . . . to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner." Cal.Penal Code § 3041.5(b)(4). The Board may exercise its discretion to hold an advance hearing *sua sponte* or at the request of a prisoner. A prisoner may request an advance hearing by submitting a written request that "set[s] forth the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration." *Id.* § 3041.5(d)(1). The Board's decision to deny a prisoner's request for an advance hearing is subject to judicial review. *Id.* § 3041.5(d)(2). Here, as in *Morales,* an advance hearing by the Board "would remove any possibility of harm" to prisoners because they would not be required to wait a minimum of three years for a hearing. 514 U.S. at 513, 115 S.Ct. 1597.

Plaintiffs provide four reasons why the advance hearings do not sufficiently reduce the risk of increased punishment for prisoners. None of these reasons is persuasive on the current record.

Plaintiffs' first reason is that the decision to grant a prisoner's request for an advance hearing is entirely discretionary. Neither a change in circumstances nor new information *requires* the Board to hold an advance hearing. However, absent evidence to the contrary, this court must presume the Board will exercise its discretion in a manner consistent with the *Ex Post Facto* Clause. *See Garner,* 529 U.S. at 256, 120 S.Ct. 1362 ("Absent a demonstration to the contrary, we presume the Board follows its statutory commands and internal policies in fulfilling its obligations."). Plaintiffs have adduced no evidence that the Board has denied a request for an advance hearing where a prisoner has shown a change in circumstances or new evidence. In fact, Plaintiffs have adduced no evidence that the Board has denied a request for an advance hearing *for any reason.* Thus, this court must presume that the Board will, upon request, schedule advance hearings for prisoners who become suitable for parole prior to their scheduled hearings.

12

Plaintiffs' second reason is that "there is no mechanism or procedure in place for the Board to initiate a review or to accept, consider or rule on a prisoner's request[for an advance hearing]." We are not persuaded. Section 3041.5(d)(1) allows a prisoner to request an advance hearing, and § 3041.5(b)(4) allows the Board to advance a hearing based on a change in circumstances or new information. Further, in *Morales,* no statute or regulation provided for advance hearings, yet the Court relied on the fact that the Board—the same Board involved in this case—had a practice of reviewing inmates' requests for earlier parole hearings. 514 U.S. at 512, 115 S.Ct. 1597. If the Board were able to review inmates' requests for advance hearings before such hearings were explicitly authorized by statute, there is no reason to believe that the Board is no longer capable of handling such requests. Indeed, just the contrary is true now that statutory authorization has supplanted mere practice. Further, Plaintiffs have adduced no evidence that the Board has denied or failed to respond to requests for advance hearings.

Plaintiffs' third reason is that the district court concluded that "there will necessarily be a delay between any meritorious request for an advance hearing and the grant of such hearing, and Plaintiffs contend, with some evidence, that this delay will likely exceed a year." This conclusion is not supported by the evidence in the record. Plaintiffs rely in part on the fact that the Board's decision to deny parole does not become final for four months. But Plaintiffs cite no authority that requires a prisoner to wait until the Board's decision is final before he requests an advance hearing based on changed circumstances or new information. Other steps may also delay an advance hearing once a request has been made: the Board must solicit the views of the victim or next of kin before it grants a request for an advance hearing, Cal.Penal Code § 3041.5(b)(4), (d)(2); the Board must consider the merits of the request, *id.* § 3041.5(b)(4); and, if the Board grants the request, it must provide 90 days' notice to the victim or next of kin before it holds the hearing, *id.* § 3043(a)(1). But Plaintiffs fail to explain how these statutory requirements make it "virtually impossible" for a prisoner to receive an advance hearing within one year of the denial of parole—the previous default deferral period. The speculative and attenuated risk that an advance hearing will not be held within one year of a request is insufficient to establish an *ex post facto* violation. *See Morales,* 514 U.S. at 508–09, 115 S.Ct. 1597.

Plaintiffs' fourth reason is that they will be unable to establish changed circumstances or new information with respect to static factors such as the circumstances of the commitment offense or prior criminal history. Plaintiffs are correct that those static factors will not change; but a prisoner's suitability for parole may change even though static factors remain unchanged. For example, the passage of time is a change in circumstances that may affect a prisoner's suitability for parole (i.e., the prisoner's current dangerousness) even though his prior criminal history has not changed. *See Lawrence,* 82 Cal.Rptr.3d 169, 190 P.3d at 560 (holding that the passage of time is a factor the Board must consider when it determines whether a prisoner is currently dangerous and, thus, unsuitable for parole). Plaintiffs also contend that they will be unable to establish changed circumstances or new

13

information with respect to intangible factors such as the failure to accept responsibility or the lack of sufficient remorse. But, just as a prisoner must explain his acceptance of responsibility and convey his remorse at a parole hearing, a prisoner can, in a request for an advance hearing, explain that he has accepted full responsibility for his crime and convey his remorse.[42]

Even if this Court were not bound by the determination by the Ninth Circuit, which it is,[43] in light of the Supreme Court decisions in *Morales* and *Garner*, by which this Court *is* unquestionably bound, the reasoning in *Gilman* is persuasive. As with the plaintiffs in *Gilman*, Gonzales has provided no evidence, either before the State courts or this Court that, *as applied to him*, Marsy's Law has increased the risk of a prolonged incarceration.[44] That is, as was the case

---

[42] *Gilman*, 638 F.3d at 1108-10.

[43] *See, e,g, Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 959 (9th Cir. 2012); *see also Miller v. Gammie,* 335 F.3d 889, 900 (9th Cir.2003) (en banc) (holding that a three-judge panel's resolution of a legal issue in a published opinion binds all subsequent three-judge panels—unless the earlier panel is overruled by the Supreme Court or an en banc court). A published decision of a panel of the Ninth Circuit deciding an issue is binding on all subsequent panels and the district courts not only as to its holding but also as to the reasoning that produced that holding. In this case the precise holding of *Gilman* is that the District Court erred in granting a preliminary injunction, that issue is not before this Court. In reaching its decision, however, the *Gilman* court held that retroactive application of Marsy's law to prisoners like Gonzales did not on its face violate the ex post facto prohibition and that the Gilman plaintiffs failed to demonstrate by evidence drawn from the acts retroactive application that its implementation will result in a longer period of incarceration than under prior law. *See Garner*, 529 U.S. at 255. These conclusions are binding on this Court.

[44] There is some ambiguity in the Supreme Court's treatment of ex post facto challenges to statutory amendments where the amended statute does not violate the prohibition on its face. Often the Court seems to look only to the class subject to the new rule rather than focusing solely on the individual challenging the change. *See Garner*, 529 U.S. at 260 n.1 (Souter, J., dissenting) (citing *Weaver v. Graham*, 450 U.S. 24, 33 (1981)). In *Garner* the Court seemed to focus on the individual challenging the amendment's application to him. The *Gilman* court considered and rejected class based challenges to the amendment as applied. This Court assumes that Gonzales could predicate an as applied challenge either on class based considerations or on considerations peculiar to himself but after *Gilman* would have to show that either he or someone in the affected class had sought an expedited hearing and been rebuffed for reasons violating the *ex post facto* prohibition.

in his state-habeas petitions, Gonzales has not alleged, let alone produced any evidence, that he requested an earlier hearing or that the Board has denied or failed to respond to requests for advance hearings.  Thus, there are "no facts in the record from which [this Court] could infer that [Marcy's Law] created a significant risk of prolonging [Gonzales's] incarceration.[45]  To summarize *Gilman* largely addresses and rejects the arguments Gonzales has made in this Court. After *Gilman* the burden is on Gonzales to either expand upon the arguments made and rejected in *Gilman* based upon evidence that was not available at that time to show that those similarly situated have seen their sentences increased, the approach taken by the prisoners in Gilman; or alternatively, to mount an as applied challenge to the amendments by showing that he personally suffered an enhanced risk of an increase in punishment.  In both cases it appears *Gilman* would require a showing that either Gonzales or someone similarly situated, i.e., a class member, sought an expedited hearing and was rebuffed for reasons precluded by the ex post facto prohibition.

This Court must resolve all factual issues based upon the record made in the California State courts and before the Parole Board.  Gonzales points to no evidence from those records which would support a finding that his sentence has been extended by the application of Marsy's law.[46]  There is nothing in the record before this Court or in the allegations in Gonzales's Petition that would permit an inference that the state courts or the state Attorney General prevented him from developing a factual record.  Gonzales does not contend that he sought an expedited hearing for good cause and was rebuffed.

---

[45] *Gilman*, 638 F.3d at 1110-11.

[46] *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

This Court also notes that the *ex post facto* challenge to Marsy's Law is before the California Supreme Court.[47]  In time that court will resolve the dispute between the *Aragon* court and the *Vicks* court.  The ultimate outcome before the California Supreme Court on the question of the applicability of Marsy's Law to convictions predating its adoption has no bearing on the outcome before this Court.  If the California Supreme Court agrees with the *Aragon* court, it would not change the fact this Court is bound by *Gilman*, and Gonzales is still not entitled to relief.  On the other hand, should the California Supreme Court agree with the *Vicks* court, as a decision of the California Supreme Court it would not be binding on this Court on a question of federal law; therefore it would not directly affect the outcome in this case.  At best, if the California Supreme Court decision is favorable to Gonzales, he will be entitled to a new suitability hearing under the pre-2008 schedule, which is the only relief this Court could grant.[48]

Gonzales is not entitled to relief under his first ground challenging the retroactive application of Marsy's law to him.  Because reconsideration of the second ground challenging the Board's decision denying him parole is not properly before this Court on remand given the restrictive mandate issued by the Ninth Circuit, this Court leaves undisturbed the prior determination that Gonzales is not entitled to relief under his second ground.[49]

---

[47] *Compare In re Vicks*, 125 Cal. Rptr.3d 627 (Ct. App. 2011) (holding that Marsy's Law violates *ex post facto* principles), *review granted*, 255 P.3d  952 (Cal. 2011)*, with In re Aragon*, 126 Cal. Rptr.3d 286 (Ct. App. 2011) (disagreeing with *Vicks* and holding that Marsy's Law does not violate *ex post facto* principles), *review granted*, 260 P.3d 282 (Cal. 2011).

[48] *See In re Prather*, 234 P.3d 541, 550-54 (Cal. 2010); *Haggard v. Curry*, 631 F.3d 931, 937 (9th Cir. 2010) (citing *Prather*).

[49] Relief under Gonzales's second ground would in any event be precluded by the United States Supreme Court's intervening decision in *Cooke*, 131 S. Ct. 859.

16

## VI.  CONCLUSION AND ORDER

Gonzales is not entitled to relief in this Court on any ground raised in his Petition.  He is probably a member of the Gilman certified class and may look to further action in that case for relief.  Alternatively, depending upon the outcome in the California Supreme Court he may be entitled to further relief in the state courts.  Finally, he is free to cure the deficiency in his current Petition by seeking an expedited hearing for good cause before the Board.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[50]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[51]

---

[50] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El*, 537 U.S. at 327)).

This court recognizes that a number of jurists of reason disagree about the interplay between the *ex post facto* prohibition and retroactive application of Marsy's law.  As we have seen the issue is before the California Supreme Court to resolve conflicts between the California courts.

This court is bound by *Gilman* as to the issues decided in that case and only an en banc panel of the Ninth Circuit can set aside *Gilman*.  Even if the en banc court overruled *Gilman*, the most it would conclude is that *Gilman* was wrong.  But this Court is not reviewing *Gilman*, it is reviewing a California state court decision, which is entitled to deference.  Thus, a finding that *Gilman* was wrongly decided would not establish that the Orange County Superior Court was unreasonable at the time it decided Gonzales's administrative appeal.  *See Richter,* 131 S. Ct. at 785-87.  *Pinholster* precludes an evidentiary hearing in this Court.  Thus, there is no reason to believe that jurists of reason could disagree with a decision denying Gonzales's Petition at this time.

[51] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated:  October 16, 2012.

___/s/ James K. Singleton, Jr.___
JAMES K. SINGLETON, JR.
United States District Judge
